# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Jerry T. Gay,

             Plaintiff,          **Civil Action No. 11-10771**

      vs.               **District Judge Patrick J. Duggan**

Michael Astrue,           **Magistrate Judge Mona K. Majzoub**
Commissioner of
Social Security,

             Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jerry Thomas Gay seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his degenerative disc disease and accompanying back pain.[1]  (Dkt. 1.)  42 U.S.C. § 405(g), 42 U.S.C. § 1383(c). Before the Court are the parties' motions for summary judgment.  (Dkt. 13, 15.)

The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Dkt. 4.)  The Court has reviewed the pleadings, dispenses with a hearing, and is now ready to issue its report and recommendation.[2]

## I.    Recommendation

Because substantial evidence supports Defendant's decision to deny Plaintiff's request for

---

[1]Plaintiff's motion for summary judgment raises issues about the ALJ's consideration of Plaintiff's alleged disability due to his back pain/degenerative disc disease.  The Court will therefore present and address only those facts touching upon that issue.

[2]E.D. Mich. LR 7.1(f)(2).

1

benefits and remand is not required for the ALJ's failure to discuss two medical source opinions, the Court recommends denying Plaintiff's motion for summary judgment, granting Defendant's motion for summary judgment, and dismissing this case.

## II.    Report

### A.    Facts

#### 1.    Procedural facts

On January 18, 2008 Plaintiff filed for disability, disability insurance, and supplemental security income benefits.  (AR at 13.)  Plaintiff alleged disability beginning on October 13, 2007; Defendant initially denied the claims on March 24, 2008.  (*Id.*)  Plaintiff requested a hearing.  (*Id.*) On January 8, 2010 Plaintiff appeared and testified at his hearing.  (*Id.* at 26.)  At the hearing, Plaintiff amended his disability onset date to October 22, 2005.  (*Id*. at 13.)  The ALJ denied Plaintiff's request on April 21, 2010.  (*Id.* at 10.)  Plaintiff thereafter sought review of the ALJ's decision. On December 21, 2010 the Appeals Council denied Plaintiff's request to review the ALJ's decision.  (*Id*. at 1.)  On February 24, 2011 Plaintiff filed this case seeking judicial review of the Appeals Council's final decision.  (Dkt. 1.)

#### 2.    Facts overview

Plaintiff argues that remand is required due to his disability caused by his degenerative disc disease and accompanying back pain.  The Court therefore presents the facts related to that argument. Plaintiff also argues that remand is required because the ALJ failed to address in his written decision, the medical opinions of Drs. Cheryl D. Lerchin and Todd Best.

2

3.      **Medical evidence**[3]

On August 12, 2005 Dr. Cheryl D. Lerchin, M.D., evaluated Plaintiff. (AR at 305.) She commented that she felt that Plaintiff had back pain due to lumbar strain. (*Id.*) She further stated,

> [a]lthough his physical exam today was normal, his complaint of pain throughout the right lower extremity may indicate a mild superimposed sensory radiculopathy. . . . At this time, I would limit [Plaintiff's] bending and twisting and limit the amount of time he spends in any one position. I would limit his lifting to no more than 20 pounds. I do not, however, feel that he needs any further restrictions beyond these.

(*Id.*)

On July 2, 2007 Dr. Todd Best, M.D., filled out a report concerning Plaintiff. (AR at 302.) The report consists of Dr. Best "x"-ing boxes and marking checks to reflect Plaintiff's limitations. Dr. Best marked that Plaintiff could frequently lift up to ten pounds and occasionally could lift eleven to twenty pounds. (*Id.* at 296.) Dr. Best further marked that Plaintiff could carry up to ten pounds frequently, and eleven to twenty pounds occasionally. (*Id.*) Dr. Best noted that Plaintiff could sit for fifteen minutes, and stand and walk for one hour at a time, each, with no interruption. (*Id.* at 297.) In an eight hour work day, Dr. Best noted that Plaintiff could sit, stand, and walk for two hours each. (*Id.*) The remaining time, Dr. Best further noted, Plaintiff would need to recline or lie down. (*Id.*) Dr. Best then noted that Plaintiff could either frequently or occasionally reach overhead, reach in other ways, handle, finger, push, or pull. (*Id.* at 298.)

The form Dr. Best filled out requested that he "[i]dentify the particular medical or clinical findings [that supported his] assessment of any limitations and why the findings support the assessment." (AR at 298.) Dr. Best did not put anything in this section, but circled "physical exam." (*Id.*)

---

[3]Plaintiff argues that the ALJ did not consider the first two opinions presented in this section, those opinions of Dr. Cheryl D. Lerchin and Dr. Todd Best.

As to postural activities, Dr. Best marked that Plaintiff could "never" climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (AR at 299.) Again, the report prompted Dr. Best to identify particular findings, and again Dr. Best merely circled "physical exam." (*Id.*)

As to activities, Dr. Best marked that Plaintiff could not perform activities such as shopping, but that he could do other activities, such as ambulate without assistance, use public transportation, prepare meals for himself, and care for his own personal hygiene. (AR at 302.) Dr. Best did explain his findings in a report. (*Id*. at 306.) Dr. Best stated that Plaintiff's lower back pain could be sharp in quality and could range in intensity to ten out of ten. (*Id.*) Dr. Best further stated that Plaintiff's symptoms were aggravated by sitting over fifteen minutes. (*Id.*) Dr. Best noted that Plaintiff reported that his pain was worse in the morning and evening. (*Id.*)

Upon examination, Dr. Best found that Plaintiff was able to go from sitting to standing, holding the arms of the chairs. (AR at 307.) Dr. Best noted that Plaintiff's gait was slow and stiff for the first few minutes, but that he loosens up. (*Id.*) Dr. Best further noted that Plaintiff could do heel pumps and squats, but that Plaintiff was somewhat limited by back pain. (*Id.*) Dr. Best assessed that Plaintiff had chronic low back pain. (*Id*. at 308.)

Dr. Best filled out an abilities checklist. He stated that Plaintiff could sit, but was limited in his ability to stand, bend, or stoop. (AR at 312.) Dr. Best indicated that Plaintiff could also carry, push, and pull less than twenty pounds. (*Id.*)

Dr. Best did review x-rays, but did not order any further tests.

On August 31, 2007 Dr. Michael J. Fugle, D.O., reviewed Plaintiff's lumbosacral spine MRI. (AR at 200.) Dr. Fugle reported that Plaintiff had a small disc protrusion in his L3-L4, a small-

4

moderate central disc protrusion in his L4-L5, broad-based forminal/extraforaminal protrustion in his L5-S1 contacting the ipsilateral exiting nerve root.  (*Id.*)  Dr. Fugle diagnosed Plaintiff with nerve root irritation and spondylosis.  (*Id.*)  Dr. Fugle recommended physical therapy and continued medication.  (*Id.*)

Dr. Fugle examined Plaintiff in October, 2007.  (AR at 199.)  Dr. Fugle wrote to Dr. Steven D. Zalla, D.O., that he diagnosed Plaintiff with nerve root irritation and spondylosis.  (*Id.*)  Dr. Fugle recommended that Plaintiff continue with physical therapy and his prescribed medications.  (*Id.*)  Dr. Fugle further recommended that Plaintiff visit Dr. Khan and return for a follow up visit in four weeks.  (*Id.*)

On October 22, 2007 Sumaya Boomgaard, a physical therapist, completed a discharge report for Plaintiff's physical therapy.  (AR at 210.)  She wrote that Plaintiff achieved his goals sufficiently enough for discharge.  (*Id.*)  She further wrote that "[Plaintiff] reports increase functional tolerance after starting exercise program."  (*Id.*)  She commented:

> [Plaintiff] performed transfer and bed mobility with minimal difficulties versus at a rating of very difficult at initial evaluation.  Overall functional assessment [] increased by 2 points since initial evaluation. . . . . Recommend that he purchase a[n] exercise ball since he is competent with the clinic program.

(*Id.*)

On March 13, 2008 Dr. A Sadiq, M.D., examined Plaintiff.  (AR at 240.)  Dr. Sadiq found that Plaintiff "state[d] he has low back pain, mostly dull and sharp with jabbing in his spine with activities of twisting, turning, bending, lifting[,] etc."  (*Id*. at 239.)  Dr. Sadiq then stated that Plaintiff was not in need of an "ambulatory aid," and that Plaintiff could "squat fully," and "do heel, toe, tandem walk and squatting, dress and undress and get on and off the table."  (*Id*. at 240.)

**4.**     **Plaintiff's testimony at the hearing**

5

Plaintiff stated that he used a cane at his house to get around, "from time to time." (AR at 36.) Plaintiff explained that he used the un-prescribed cane once or twice a day when he gets up, to steady himself. (*Id.*)

Plaintiff stated that he believed that his back pain disabled him. (AR at 36.) He stated that his back pain was in his lower back and was constant. (*Id.*) He stated that he took medication for his pain, which helped, but that, at the time of hearing, he had been off the medication between four and six months. (*Id.*)

He stated that, in the morning, his pain was a ten out of ten scale. (AR at 37.) During the day, Plaintiff stated his pain eased to seven or eight out of the ten point scale. (*Id.*) Plaintiff further stated that his pain affected his ability to walk, stand, sit, and do things of that nature. (*Id.*) He explained that he was uncomfortable sitting and therefore was "fidgety." (*Id.* at 38.) He further explained that he had to move around to make the pain shift. (*Id.*) He stated that he was able to stand for fifteen or twenty minutes, but after that amount of time, the pain would become so severe that he would have to sit down. (*Id.*) He also stated that he could not walk more than a half a block before he had to stop. (*Id.*) He added that he had difficulty going up and down stairs. (*Id.*) He explained that he often needed to stop and catch his breath going up or down the steps. (*Id.*)

When questioned how much he could lift or carry, Plaintiff responded that he could lift/carry ten pounds–fifteen pounds, at the most. (AR at 38.)

Plaintiff, responding to the ALJ's questions, stated that he could not bend down to pick up a piece of paper without excruciating pain. (AR at 39.) He also answered that he could not do any postural activities: kneeling, stooping, crouching, or crawling. (*Id.*)

He did state, though, that his arms and hands were ok, and that his legs were "pretty good,"

6

save for that, at times, he experienced a numbing sensation in his right leg, from his thigh to his ankle.  (AR at 40.)

The ALJ questioned Plaintiff whether he was able to take care of his personal needs.  (AR at 41.)  Plaintiff responded that he was able to care for those needs–bathing, showering, dressing, and grooming.  (*Id.*)  Despite being able to care for himself, he stated that he was not able to do any housework.  (*Id.*)  He clarified that he could not do any housework, but that he could cook, do the dishes, and that he was able to vacuum every once in a while.  (*Id.* at 42.)  Plaintiff added that he was also able to go to the grocery store once a month to purchase groceries.  (*Id.*)

For activity, Plaintiff stated that he is able to go to his mail box to check the mail every day.  (AR at 42.)

Plaintiff stated that his pain was so bad that he took forty-five minute to hour-long naps three to four times a day.  (AR at 44.)

The ALJ then posed several hypothetical situations to the vocation expert.  (AR at 47.)

> Let's assume an individual of [Plaintiff's] age, education and work experience who's capable of performing the exertional demands of, we're going to start at the light level with occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling and no climbing of ropes, ladders and scaffolds. Also avoid concentrated exposure to . . . unprotected heights, vibrating tools, moving machinery, as well as avoiding concentrated exposure to dust, fumes, gases and smoke.

(AR at 50.)  Given that hypothetical, the vocational expert stated that such a person could perform jobs in the economy.  (*Id.*)  The ALJ then limited that hypothetical to a sit/stand option.  (*Id*. at 51.)  The vocational expert stated that jobs still existed in Plaintiff's region and state.  (*Id.*)

### 5. The ALJ's decision

The ALJ stated that Plaintiff suffered from the following severe impairments: multilevel degenerative disc disease with nerve root impact at L5-S1 without radiculopathy; asthma; chronic

obstructive pulmonary disease (COPD); and obesity.  (AR at 16.)

The ALJ first noted that a prior ALJ decision, from October 12, 2007, found that Plaintiff had multi-level degenerative disc disease with nerve root impact at L5-S1 without radiculopathy; but that Plaintiff was limited to light work; and that Plaintiff was not disabled because he could do his past relevant work.  (AR at 16.)  The ALJ stated that Plaintiff's counsel argued at the hearing that the 2007 decision did not take into account all of Plaintiff's impairments, including Plaintiff's degenerative disc disease.  (*Id.*)  So the ALJ stated that "the analysis continues with consideration of all the diagnoses since the amended onset date of October 22, 2005."  (*Id.*)

The ALJ then stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment.  (*Id.*)  In making this decision, the ALJ stated that he considered Listing 1.02, Major dysfunction of a joint, and Listing 1.04, Disorders of the spine, relating to Plaintiff's degenerative disc disease.  (*Id.*)  The ALJ reasoned:

> Listing 1.02 was considered; however, the evidence does not show that [Plaintiff] has the motor, sensory, or reflex loss required to meet that Listing, and [Plaintiff] is able to ambulate effectively as defined in 1.00B2b.
>
> Listing 1.04 requires [Plaintiff] to demonstrate evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). The record does not demonstrate these findings.

(*Id*. at 16-17.)

The ALJ reviewed Plaintiff's hearing testimony.  (AR at 17.)  The ALJ stated that Plaintiff alleged that he had experienced constant severe, lower back pain since 2004.  (*Id.*)  The ALJ noted that Plaintiff stated that he used a cane once or twice a day for balance early in the morning when his pain was at its worst.  (*Id.* at 17-18.)  The ALJ then noted that Plaintiff stated that, as the day

8

progressed, his pain edged toward seven or eight out of ten, and that the pain affected his sitting, standing, and walking.  (*Id*. at 18.)

The ALJ reviewed Plaintiff's testimony regarding his limitations.  (AR at 18.)  The ALJ stated that Plaintiff testified that he can stand for twenty minutes before needing to sit down; walk one-half of a block before he needed to stop because of shortness of breath; and lift/carry ten to fifteen pounds.  (*Id.*)  The ALJ also stated that Plaintiff testified that he found climbing stairs difficult, that he could not bend down to pick up a piece of paper without pain, and that he could not do any postural activities, such as kneeling, crawling, or crouching.  (*Id.*)  The ALJ then reviewed Plaintiff's testimony that his hand were ok and legs were pretty good.  (*Id.*)

The ALJ then reviewed Plaintiff's activities of daily living.  (AR at 18.)  The ALJ found that Plaintiff stated that he did not do outside work or housework–although the ALJ noted that Plaintiff reported that he had used the vacuum once or twice and that he did the cooking and could do the dishes.  (*Id.*)  The ALJ then recalled that Plaintiff stated that he became winded by walking the forty feet to his mailbox.  (*Id.*)  The ALJ stated that Plaintiff reported going to the store once a month to buy groceries.  (*Id.*)  Because of his back pain and fatigue, the ALJ recounted, Plaintiff said that he napped for around three to four hours each day.  (*Id.*)

The ALJ then stated, that, after considering the evidence, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were only partially supported by the medical evidence.  (*Id.*)

The ALJ then discussed the evidence he found contradicted Plaintiff's statements.  (AR at 18.)  The ALJ first found that Plaintiff's statements of his inability to walk without pain and inability to bend were contradicted by Plaintiff's competency at performing exercise ball therapy (which

indicated that Plaintiff was able to perform postural maneuvers), and Plaintiff's testimony that he was able to "independently take of his personal needs, cook, do the dishes, occasionally vacuum, and shop once a month to buy groceries." (*Id.*) The ALJ also noted that Plaintiff demonstrated a steady gait and that he ambulated without assistive devices. (*Id.*)

The ALJ reviewed the record and found that Plaintiff's allegation that he suffered from debilitating pain was not supported by the record. (AR at 18.) The ALJ stated that Plaintiff, despite not having taken prescription medication for four to six months, did not report an increase in his pain. (*Id.*) The ALJ stated that Plaintiff further did not report evidence of treatment from a pain management specialist or a suggestion for back surgery. (*Id.*)

The ALJ discussed Dr. Fugle's examination of Plaintiff in August, 2007. (AR at 19.) The ALJ noted that Dr. Fugle diagnosed degenerative disc disease of the L4 lumbar disc with no scoliosis or spondylolisthesis. (*Id.*) The ALJ stated that the examination did not show that Plaintiff experienced any radiculopathy. (*Id.*) The ALJ also stated that Plaintiff's MRI revealed L3-L4 small disc protrusions, small to moderate central disc protrusions of L4-L5, and broad-based forminal/extraforaminal protrusions of L5-S1 contacting the ipsilateral exiting nerve root. (*Id.*)

The ALJ took note that Plaintiff "exhibited good heal/toe[sic] walking; neurovascular status was intact; and deep tendon reflexes were 2+ at L4 and S1." (*Id.*) The ALJ noted that Plaintiff completed his prescribed physical therapy "without incident." (*Id.*) The ALJ stated that Dr. Fugle, in October, 2007, reported no paresthesias down Plaintiff's right leg with exercises and that Plaintiff continue with physical therapy. (*Id.*)

The ALJ reviewed a September 17, 2007 initial physical therapy evaluation. (AR at 19.) This evaluation, the ALJ stated, showed Plaintiff complained of lower back pain with recent right

leg pain and paresthesia and the inability to walk for more than fifteen minutes.  (*Id.*)  The report also indicated, the ALJ stated, that Plaintiff attained his goal with a minimally difficult to somewhat difficult score.  (*Id.*)  The ALJ found that the report showed that Plaintiff was able to perform transfers and bed mobility with minimal difficulty. (*Id.*)  The ALJ compared that finding to Plaintiff's intake finding of "very difficult."  (*Id.*)

The ALJ reviewed a March 13, 2008 state agency examination performed by Dr. Sadiq.  (AR at 19.)  The ALJ stated that this examination showed that Plaintiff complained of lower back pain–dull and sharp with jabbing pains in his spine when twisting, turning, bending, and lifting. (*Id.*)  The ALJ reported that the examination revealed that Plaintiff experienced some "limited lumbar range of motion and limited abilities in carrying, pushing, and pulling."  (*Id.*)  But the ALJ also noted that the examination showed that Plaintiff was able to squat fully, do heel-toe tandem walking, dress and undress and get on and off the table.  (*Id.*)  The ALJ found that the examination diagnosed Plaintiff with "a history of degenerative disc disease and scoliosis and disc protrusions at multiple levels with no evidence of herniated disc or nerve root irritation[.]" (*Id.*)

The ALJ then reviewed Dr. Zalla's treatment records.  (AR at 19.)  These records, the ALJ stated, showed that Plaintiff received a series of seven injections at the right sacroliliac joint between February, 2008 and May, 2009.  (*Id.*)  The ALJ stated that Dr. Zalla reported that Plaintiff complained of back pain.  (*Id*. at 20.)

The ALJ then stated that he gave significant weight to the state agency physical residual functional capacity assessment from March 25, 2008.  (AR at 20.)  He stated that he did so because the RFC was "consistent with the medical evidence as a whole."  (*Id.*)  The ALJ then stated that, "other than a note from Dr. Zalla on June 10, 2008, limiting [Plaintiff] from community service,

there is no evidence that [Plaintiff's] physicians have placed him on a physical restriction and no

treating or examining physician has opined that [Plaintiff] is unable to work." (*Id.*)

> The ALJ explained his RFC calculation:
>
> The [RFC] in this decision is based largely on [Plaintiff's] testimony, to the extent
> his alleged limitations can reasonably be related to medically determinable
> impairments. The undersigned has given some weight to [Plaintiff's] testimony of
> fatigue and back pain and therefore finds [Plaintiff] can do only light work.
> Additionally, because of alleged back pain and shortness of breath, he cannot climb
> ropes, ladders, or scaffolds; and can occasionally climb ramps and stairs, balance,
> stoop, kneel, crouch, or crawl. Because he stated that he is bothered by solvents,
> paint, smoke, and fumes, the [RFC] restricts work around such irritants.

(AR at 20.)

The ALJ then explained his hypothetical questions posed to the vocational expert. (AR at

21.) The ALJ stated that he questioned the vocational expert as to whether a person with Plaintiff's

RFC and limitations would be able to perform jobs in the economy. (*Id.*) The ALJ stated that a

person with Plaintiff's RFC and limitations could perform work in the economy. (*Id.*) The ALJ then

directed a finding of not disabled and denied Plaintiff's requested for social security benefits. (*Id.*

at 22.)

**B.   Standard**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

final decisions. Judicial review under this statute is limited to determining whether the

Commissioner's findings are supported by substantial evidence and whether the Commissioner's

decision employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla

but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to

try cases, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y*

*of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the

administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981).  If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708

F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite

conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d

535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that

there is a zone of choice within which the decisionmakers can go either way, without interference

by the courts").

### 1.      Framework For Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

1.  he was not presently engaged in substantial gainful employment; and
2.  he suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.  he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented him from

doing his past work, the Commissioner, at step five, would consider his residual functional capacity

("RFC"), age, education and past work experience to determine if he could perform other work.  If

13

he could not, he would be deemed disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.      Analysis

Plaintiff argues that substantial evidence does not support the ALJ's decision and that the ALJ's decision did not follow the law.  (Pl.'s Mot. for Summ. J. at 7.)

#### 1.      The ALJ did not reopen Plaintiff's prior claim

The parties first dispute whether the ALJ reopened Plaintiff's 2005 claim.  The Court finds that the ALJ did not reopen Plaintiff's 2005 claim.

Mere consideration of evidence that was not presented to a former ALJ does not automatically reopen a prior claim.  As Defendant argues, AR 98-4(6) applies when an ALJ is adjudicating a subsequent claim for benefits with a period that was not previously considered by an ALJ.  AR 98-4(6), 1998 WL 283902 (June 1, 1998).  If the subsequent claim does not involve new or material evidence, then the subsequent adjudicator, ALJ, is bound by the former RFC determination.  *Id.*  But if new and material evidence exists, then the ALJ is not bound by the former

14

RFC determination.[4] (*Id.*)  In his written decision, the ALJ stated that "[t]he reason for not adopting the findings of the prior decision in this case is that the current record contains new and material evidence relating to these findings and establishes that [Plaintiff's] condition has persisted since that time with allegations of postural limitations."  (AR at 14.)

Here, then, the ALJ's consideration of Drs. Cheryl D. Lerchin and Todd Best's opinions does not automatically, or by a de facto means, reopen Plaintiff's prior claim.  And as Defendant points out, the ALJ explicitly ruled on the January 14, 2008 benefits application.  (AR at 22.)

The Court therefore finds that the 2005 claim was not reopened.

## 2.    Substantial evidence supports the decision denying benefits

Substantial evidence supports the decision denying benefits.  The ALJ thoroughly reviewed Plaintiff's hearing testimony.  The ALJ noted Plaintiff's contradictory testimony:  Plaintiff's statements that he could not walk a block or bend and stoop–compared to Plaintiff's statements that he was able to independently care for himself, able to use the vacuum, and shop for groceries.  And the ALJ noted that Plaintiff demonstrated that he was able to walk steadily and without assistive devices.  The ALJ further pointed out that Plaintiff did not report an increase in pain, despite being off of pain medication for six months.

The ALJ then reviewed the medical evidence.  He noted Dr. Fugle's examinations and how they showed that Plaintiff had mild to moderate disc protrusions, that Plaintiff exhibited good heel/toe walking, and that Plaintiff was able to complete physical therapy without incident.

---

[4]*See also* SSR 68-12a ("[W]here it has been found that new and material evidence exists in the *present* record, the restrictive doctrine of res judicata may not be applied thereto, and the claimant may now be entitled to a favorable finding on an issue previously decided against him even though . . . the lapse of time may prevent the reopening of prior determinations to the contrary.").

15

The ALJ also reviewed Plaintiff's physical therapy notes. The notes showed that Plaintiff was able to perform transfers and bed mobility with minimal difficulty.

The ALJ credited the March, 2008 state agency examination, which showed that Plaintiff complained of pain when twisting, turning, bending, and lifting, and that Plaintiff had limited range of motion and limited ability to carry, push, and pull. But the ALJ also noted that the report showed that Plaintiff was able to squat fully, heel-toe tandem walk, dress and undress, and get on and off the table.

The ALJ then pointed out that no treating or examining physician opined that Plaintiff was unable to work.[5] As Defendant points out, "a lack of physical restrictions constitutes substantial evidence for a finding of non-disability." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) (quoting *Maher v. Sec'y of Health and Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)). Taking the evidence into consideration, the ALJ found that Plaintiff was able to perform light work with some limitations and with a sit/stand option.

The Court finds that the medical evidence presented is more than a scintilla of evidence to support Defendant's denial of benefits to Plaintiff.

### 3.    Remand is not required for the ALJ's failure to discuss two opinions

Plaintiff next argues that the ALJ erred when he did not discuss Drs. Cheryl D. Lerchin and Todd Best's opinions. He argues that the ALJ did not discuss their opinions, and that that absence

---

[5]The Court recognizes that the ALJ did not note Dr. Best's opinion that Plaintiff was unable to work. The Court discusses in the next section why this failure to mention Dr. Best's opinion is not cause for remand.

16

of discussion is a legal error requiring remand.[6]

Defendant argues that "the fact that the ALJ did not explicitly discuss the evidence from Dr. Lerchin and Dr. Best does not amount to reversible error." (Def.'s Mot. for Summ. J. at 9.) Defendant further argues that, even if Drs. Lerchin and Best were treating sources, the ALJ was not in error in specifically addressing the opinions for two reasons. (*Id.*) Defendant first maintains that Dr. Lerchin did not give any opinion that was inconsistent with the ALJ's ultimate RFC finding. (*Id.*) Defendant then argues that the ALJ should be absolved from remand because Dr. Best's opinion was patently deficient, and the ALJ indirectly distinguished Dr. Best's opinion. (*Id.* at 10.)

The Court agrees with Defendant on both of its arguments.

### a.    The ALJ's RFC accounted for Dr. Lerchin's opinion

Plaintiff argues that remand is required because the ALJ did not explicitly discuss Dr. Lerchin's opinion. The Court disagrees. The Court finds that the RFC captures Dr. Lerchin's medical evidence and thus remand is not required.

Again, Dr. Lerchin commented that she felt that Plaintiff had back pain due to lumbar strain. (*Id.*) She further stated,

> [a]lthough his physical exam today was normal, his complaint of pain throughout the right lower extremity may indicate a mild superimposed sensory radiculopathy. . . . At this time, I would limit [Plaintiff's] bending and twisting and limit the amount of time he spends in any one position. I would limit his lifting to no more than 20 pounds. I do not, however, feel that he needs any further restrictions beyond these.

(*Id.*) The ALJ explained his RFC calculation:

---

[6]The Court pauses to note that Plaintiff is arguing only that the ALJ did not discuss Drs. Lerchin and Best's opinions, not that he was unaware of the opinions. For the ALJ specifically noted that he was recalculating Plaintiff's RFC due to new and material evidence touching upon "postural limitations"–limitations that were in Drs. Lerchin and Best's opinion. (AR at 14.) He therefore was aware of the opinions in recalculating Plaintiff's new RFC.

The [RFC] in this decision is based largely on [Plaintiff's] testimony, to the extent his alleged limitations can reasonably be related to medically determinable impairments.  The undersigned has given some weight to [Plaintiff's] testimony of fatigue and back pain and therefore finds [Plaintiff] can do only light work.  Additionally, because of alleged back pain and shortness of breath, he cannot climb ropes, ladders, or scaffolds; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.  Because he stated that he is bothered by solvents, paint, smoke, and fumes, the [RFC] restricts work around such irritants.

(AR at 20.)  "Light work" is

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

Here then, the Court finds that Dr. Lerchin's opinion falls within the ALJ's RFC.  Dr. Lerchin limited Plaintiff's weight bearing amount to twenty pounds, that amount of "light work," and limited Plaintiff's bending, twisting, and stationary abilities.  The ALJ limited, in a hypothetical question to the vocational expert, Plaintiff to a sit/stand option, and found that Plaintiff could perform jobs in the economy.  (AR at 51.)  Dr. Lerchin commented on no other restrictions.

Because the ALJ's RFC incorporated Dr. Lerchin's opinion, the ALJ's failure to mention the opinion is harmless.

> **b.     The ALJ did not commit an error worthy of remand when he did not specifically address Dr. Best's opinion**

Plaintiff also argues that the ALJ impermissibly did not discuss Dr. Best's opinion.  Defendant argues that Dr. Best's opinion, which is not a treating source opinion, was patently deficient and that the ALJ indirectly addressed Dr. Best's opinion.  Defendant therefore offers that not directly addressing Dr. Best's opinion was not an error.

18

The Court again agrees with Defendant. Even if Dr. Best were a treating source, the ALJ's failure to directly address Dr. Best's opinion is not an error worthy of remand.

The Sixth Circuit has opined instances of when an ALJ's failure to address a treating source would not be reversible error. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). These instances include (1) when a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) when the Commissioner adopts the treating source's opinion or makes findings consistent with the opinion; and (3) when the ALJ has met the procedural safeguards of the treating source rule, by indirectly addressing the opinion through his analysis. *Id.* "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)(citations omitted).

Here, Dr. Best's opinion consists of check marks and explanations of simply "circling," "physical exam." As Defendant shows, Dr. Best points to no medical evidence to support his claim. Dr. Best did not review any MRI, EMG, or CT. (AR at 306.) And Dr. Best noted that Plaintiff's x-rays were "normal." (*Id.*) Dr. Best's examination notes showed that Plaintiff was able to do transfers, that his gait was slow when he initially starts walking, he could walk on his heels and toes with "back pain," and that he could do heel pumps, and squats. (*Id.* at 307.) The remainder of the examination notes show nothing extraordinary that would correlate with Dr. Best's restrictive, unexplained opinions limiting Plaintiff's standing and sitting.

The Court therefore finds that Dr. Best's opinion is patently deficient and the error was not

worthy of remand.

Defendant alternatively argues that the ALJ indirectly addressed Dr. Best's opinion. (Def.'s Mot. for Summ. J. at 10.) The Court agrees. In calculating the RFC, the ALJ stated that the "[RFC] in this decision is based largely on [Plaintiff's] testimony, to the extent his alleged limitations can reasonably be related to medically determinable impairments." (AR at 20.) The ALJ's analysis of Plaintiff's testimony addresses Dr. Best's opinion. *See West v. Comm'r of Soc. Sec.*, 240 F.App'x 692, 697 (6th Cir. 2007) (stating, "the ALJ did not err in refusing to give probative weight to a treating physician's opinion that is contradicted by statements from the claimant himself."). Here, the ALJ noted that Plaintiff made contradictory statements about his pain and abilities. (AR at 18.) The ALJ pointed out that, while Plaintiff stated that he was unable to walk a half a block and that he could not bend at all, the record showed that he became competent with exercise ball therapy. (*Id.*) The ALJ also pointed out that Plaintiff was able to take care of himself, do the dishes, occasionally vacuum, and shop. (*Id.*) And the ALJ noted that Plaintiff "demonstrated a steady gait" in the record and at the hearing. (*Id.*) The ALJ finally pointed out that, despite allegations of debilitating symptoms, Plaintiff did not report any increase in pain after he stopped taking medications. (*Id.*)

Given that the ALJ based his RFC calculation on Plaintiff's contradictory statements, including statements of disability that aligned with Dr. Best's opinion, the Court finds that the ALJ indirectly attacked Dr. Best's opinion and therefore is absolved of remand for failure to directly address the opinion.

### D.  Conclusion

For the above-stated reasons, the Court recommends denying Plaintiff's motion for summary

judgment, granting Defendant's motion for summary judgment, and dismissing this case.

## III.   Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:    January 5, 2012                    s/ Mona K. Majzoub_____
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel

21

of Record on this date.

Dated: January 5, 2012                     s/ Lisa C. Bartlett
                                           Case Manager